**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
JUDICIAL WATCH, INC.,          )
                               )
            Plaintiff,         )
                               ) Civil Action No. 02-1633 (EGS)
      v.                       )
                               )
WILLIAM J. CLINTON, et al.,    )
                               )
            Defendants.        )
_____)
```

**MEMORANDUM OPINION AND ORDER**

I.  Introduction

Plaintiff in this case, Judicial Watch, Inc. ("Judicial Watch"), brings this *Bivens* action against nine current and former members of Congress, including four current and former United States Senators ("Congressional defendants"), and former President William J. Clinton (collectively, "defendants"), arguing that the current audit of its tax exempt status is motivated by improper political considerations. Plaintiff alleges that the defendants inappropriately pressured the Internal Revenue Service ("IRS") to initiate and continue an audit of Judicial Watch in retaliation for the organization's activities against the Clinton Administration in violation of its First, Fourth, and Fifth Amendment rights under the Constitution. Plaintiff further alleges that the defendants entered into a conspiracy to deprive it of its constitutional rights.

Plaintiff's claims are based on the fact that the House and Senate

1

defendants, as well as former President Clinton, forwarded constituent mail regarding Judicial Watch's tax exempt status to the IRS.  The congressional defendants argue that plaintiff's claims are barred by collateral estoppel, that plaintiff's claims are subject to dismissal because there is no *Bivens* remedy available, that plaintiff's claims should also be dismissed because the allegations on their face fail to establish a violation of constitutional rights, and that the claims should be dismissed based on defendants' qualified immunity.  Former President Clinton incorporates the congressional defendants' arguments in his motion to dismiss and, additionally, submits that the claims against him should be dismissed because he possesses absolute immunity.

   Pending before the Court are the House Defendants' Motion to Dismiss, the Senate Defendants' Motion to Dismiss, and Clinton's Motion to Dismiss.  Upon consideration of the motions, the responses and replies thereto, and the case and statutory law governing the issues, the Court finds that defendants' motions to dismiss [15], [16], [20] are **granted.**

II.   Facts

    Judicial Watch was founded in 1994 by Larry Klayman, its Chairman and General Counsel.  It is a not-for-profit, non-partisan,

tax-exempt Section 501(c)(3) public interest foundation[1] that relies on the Freedom of Information Act ("FOIA"), the civil discovery process, and court litigation, among other tools, "to educate the American people about corruption and abuses of power in government and to hold the responsible parties accountable." Pl.'s Opp'n to Clinton's Mot. at 2.  In its eight years of operation, Judicial Watch has filed over one hundred and fifty public interest lawsuits concerning defendant Clinton, Mrs. Clinton, and /or the Clinton Administration, and other high government officials of all political parties. Compl. at ¶ 17.

On September 28, 1998, during impeachment proceedings against President Clinton, Judicial Watch submitted its "Interim Report: Crimes and Other Offenses Committed by President Bill Clinton Warranting His Impeachment and Removal from Elected Office ("Interim Report") to members of the U.S. House of Representatives Committee on the Judiciary.  The Interim Report contained Judicial Watch's findings that the Clinton Administration had operated a campaign of retribution and retaliation against its perceived enemies, using politically-inspired, retaliatory tax audits as a major weapon in that campaign.  The Interim Report recommended that President Clinton

---

[1] Section 501(c)(3) of Title 26 prohibits tax-exempt organizations from participating in political campaigns, either in support of or in opposition to candidates for office. *See, e.g., Fund for the Study of Economic Growth and Tax Reform v. Internal Revenue Serv.*, 997 F. Supp. 15 (D.D.C. 1998), *aff'd,* 161 F. 3d 755 (D.C. Cir. 1998).

be impeached. *Id.* at ¶¶ 21-22.

On or about October 9, 1998, only four days after its Interim Report was made an official part of Congress' impeachment proceedings, plaintiff received a letter ("Audit Letter") signed by Donna Dorsey, an IRS revenue agent, stating that it had been selected for the audit. In addition to the Audit Letter, plaintiff received an IRS Form 4564 Information Document Request ("Document Request") requesting that Judicial Watch "[p]rovide the names and addresses of the directors [of Judicial Watch and their relationship to any political party or political groups." *Id.* at ¶ 25.

On October 14, 1998, plaintiff sent a FOIA request to a number of IRS offices demanding access to documents related to the agency's attempt to audit Judicial Watch. *Id.* at ¶ 27. Plaintiff maintains that, four years later, it has still not received all the documents responsive to its FOIA requests. On or about November 18, 1998, plaintiff received notice of its final tax exempt status at approximately the same time that it received the Audit Letter–a fact which, in plaintiff's view, is "extraordinarily unusual." Pl.'s Opp'n to Clinton's Mot. at 3. Since receiving notice of the IRS' audit, Judicial Watch has met with IRS officials on several occasions for the purposes of discussing the agency's attempts to audit the organization. Plaintiff contends that these meetings "have made all too clear the IRS' motive for selecting Judicial Watch for an audit." *Id.*

On May 12, 1999, Paul Harrington, Director of the IRS' Baltimore District Office, produced to Judicial Watch a portion of the documents identified by Judicial Watch in its FOIA request. Among the documents withheld, according to plaintiff, were those containing the identities of the persons or entities requesting the audit. The documents that the agency did release showed that the IRS intended to critically examine Judicial Watch's "opinion." Comp. at ¶ 34.

On July 13, 1999, Wayne Hampel, Group Manager of the Tax Exempt Organizations branch office of the Baltimore District of the IRS, informed Judicial Watch that the IRS was withdrawing the proposed audit at least until resolution of pending FOIA disputes and the outcome of an investigation by the Treasury Inspector General for Tax Administration that had been commenced in response to Judicial Watch's complaints.

On April 14, 2000, Judicial Watch sent a second FOIA request to the IRS seeking access to any new documents addressing the audit. On August 19, 2000, Judicial Watch received a renewed audit and a voluminous document request identifying practically all documents created by Judicial Watch.

On June 1, 2000, Judicial Watch sent a letter to Acting Director for Exempt Organizations, Steven Miller, complaining that the resumption of the audit was politically motivated and requesting that the IRS withdraw its renewed audit plans and not consider initiating

another audit until after a new president took office on January 20, 2001. Compl. at ¶48.  Acting Director Miller agreed to delay consideration of the audit at least until a new president took office on January 20, 2001.  On January 8, 2001, however, Judicial Watch received another notice of the proposed audit from the IRS, including the same "highly burdensome" list of document requests. Pl.'s Opp'n to Congress. Defs.' Mot. at 7. Accompanying the notice was the resubmission of the document request that had been issued in conjunction with the April 19, 2000 letter.  Judicial Watch did not comply with the request. On August 16, 2001, the IRS sent an additional document request to Judicial Watch to which the organization has provided no response.

On January 13, 2001, Judicial Watch filed a third FOIA request to the IRS. "Again, the IRS refused and/or failed to provide full and accurate responses to the FOIA request." Pl.'s Opp'n to Clinton's Mot. at 8. Shortly after responses were due to the FOIA requests, Judicial Watch received a phone call from an IRS agent who indicated that the IRS intended to vigorously pursue the audit of the organization through three agents. Compl. at ¶ 51.

On July 27, 2001, Judicial Watch sent another FOIA request for the production of documents to the IRS. On August 24, 2001, the IRS failed to produce the documents requested by plaintiff. "To date, the IRS has refused and/or failed to provide full and accurate responses to the fourth FOIA request." *Id.* at 53.  On August 16, 2002, the IRS

served Judicial Watch with a demand for 23 additional categories of documents and a threat that "failure to comply with our request for information could result in the loss of your tax-exempt status." *Id.* at 54.

In September 2001, plaintiff filed the first of its lawsuits relating to the IRS' audit. In *Judicial Watch, Inc. v. Rossotti,* Judicial Watch sued IRS Commissioner Charles Rossotti and various IRS officials, claiming constitutional violations from the alleged "retaliatory, politically-motivated, and unconstitutional" audit. *Judicial Watch, Inc. v. Rossotti*, 217 F. Supp. 2d. 618, 621 (D.Md. 2002)(*Judicial Watch I*). In its amended complaint in that litigation, Judicial Watch asserted *Bivens* claims against the named IRS officials for alleged violations of Judicial Watch's First, Fourth, and Fifth Amendment rights by the IRS audit. Am. Compl. at ¶ 58. Judicial Watch also sought to enjoin the defendants from proceeding with the audit. Finally, Judicial Watch attempted to compel the production of documents allegedly being withheld by the IRS in response to Judicial Watch's FOIA requests. *Id.* On December 10, 2001, IRS officials informed plaintiff that the scope of the audit was being expanded to cover five years rather than the two years initially contemplated. On March 27, 2002, the Maryland court dismissed all of Judicial Watch's claims based on qualified immunity. *Judicial Watch I*, 217 F. Supp. 2d at 626-27.

On January 18, 2002, the IRS served an administrative summons in

the United States District Court for the District of Columbia to enforce the document requests it had previously issued to Judicial Watch. On March 28, 2002, the United States filed a petition to enforce the IRS' summons in the District Court. *United States v. Judicial Watch, Inc.,* No. 02-0144 (D.D.C. Dec. 11, 2002).  In the course of the proceeding, Judicial Watch challenged the constitutional permissibility of the IRS audit. In July 2002, the IRS produced additional documents to Judicial Watch, including an August 14, 1998 e-mail from a citizen to President Clinton inquiring as to Judicial Watch's tax-exempt status, which had been forwarded to the IRS in September, 1998, as well as correspondence to the IRS from various members of Congress.  The Congressional correspondence included a letter from Congressman Charles B. Rangel to Commissioner Rossotti forwarding an inquiry regarding Judicial Watch's tax-exempt status that Rep. Rangel had received from Congressman Martin Frost on behalf of one of Rep. Frost's constituents.  Also included in the Congressional correspondence were constituent inquiries forwarded from to the IRS by the offices of four senators and three representatives.

On December 11, 2002, the District Court presiding over the summons enforcement proceeding issued an order enforcing the summons, finding "no evidence of political vindictiveness or a retaliatory motive," and determining Judicial Watch's constitutional challenges to be "without merit." *Id.,* slip op. at 2-3; *see also id.* at 27.

On August 19, 2002, Judicial Watch filed the instant suit against former President Clinton and various former and current members of Congress. Based on the facts outlined above, plaintiff concludes that "each time the IRS has contacted Judicial Watch about the audit was shortly after Judicial Watch uncovered damaging information, made a disclosure, obtained a favorable court ruling, or undertook some legal action in furtherance of its public interest activities concerning high government officials." Pl.'s Opp'n to Clinton's Mot. at 9.

Plaintiff maintains that, because the Congressional defendants and the former President forwarded constituent mail and e-mail regarding Judicial Watch's tax-exempt status to the IRS for response, they are liable for the retaliatory, politically-motivated, and unconstitutional audit of the organization.

After defendants in the present case had filed their opening memoranda in support of their respective motions to dismiss, the Fourth Circuit issued an opinion in the *Judicial Watch I* case.  In its decision, the Fourth Circuit affirmed the district court's dismissal of the *Bivens* claims, "but on the separate and antecedent ground that no *Bivens* remedy exists against individual government officials for the initiation and conduct of an allegedly politically motivated, retaliatory tax audit." Congress. Defs.' Reply Br. at 3 (citing *Judicial Watch I,* 317 F.3d 401, 409-13 (4th Cir. 2003).

9

### III. Discussion

#### A. Standard of Review

The Court will not grant a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the complaint's factual allegations. *See Does v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1276.

#### B. Arguments

The House and Senate defendants move to dismiss plaintiff's amended complaint on the following grounds: (1)plaintiff's claims are barred by the doctrine of collateral estoppel; (2) there is no *Bivens* remedy for plaintiffs' claims against the individual defendants; and(3) the individual defendants are entitled to qualified immunity.

Former President Clinton sets forth one additional reason why the amended complaint should be dismissed with prejudice; specifically, he maintains that he is entitled to absolute immunity because the liability alleged in the present case is predicated on

his official presidential acts.

Because resolution of the remaining claims would require the Court to engage in consideration of the merits, the Court will first address the threshold question of collateral estoppel.

### (1) The Doctrine of Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, prevents parties from relitigating issues that have already been adjudicated. It seeks to conserve judicial resources, to protect citizens from multiple lawsuits, and to reduce the likelihood of inconsistent verdicts. *Montana v. U.S.,* 440 U.S. 147, 153-54, 99 S. Ct. 970 (1979). Under controlling precedent, collateral estoppel is appropriate when three requirements are met: "[f]irst, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Am. v. United States,* 961 F.2d 245, 254 (D.C. Cir. 1992). *See also Hall v. Clinton, et al.,* 235 F.3d 74, 80 (D.C. Cir. 2002); *Otherson v. Dep't. of Justice,* 711 F.2d 267, 272 (D.C. Cir. 1983) (issue preclusion is only appropriate when a party has had a full and fair opportunity to present her case at a prior hearing.) In issue preclusion, it is the prior *judgment*

that matters, not the relevant court's opinion explaining that judgment. "Even in the absence of *any* opinion a judgment bars relitigation of an issue necessary to the judgment." *Id.* (citing *American Iron & Steel Inst. v. EPA,* 866 F.2d 390, 397 (D.C. Cir. 1989)(emphasis in original), *cert denied,* 497 U.S. 1003, 110 S. Ct. 3237 (1990). Moreover, once an issue is raised and determined, it is the entire issue that is precluded, not merely the specific arguments made in support thereof in the first case. *See Securities Indus. Ass'n v. Board of Governors,* 900 F.2d 360, 364 (D.C. Cir. 1990) (plaintiff may not raise new arguments in second proceeding even if they were never made in the first proceeding; as long as arguments could have been made, they are precluded.)

Defendants in the instant case argue that plaintiff's amended complaint seeks to raise the same constitutional challenges to the current IRS audit that it raised in its lawsuit in the federal district court in Maryland–namely, that the IRS audit is a politically motivated, retaliatory audit in violation of Judicial Watch's First, Fourth and Fifth Amendment rights.

Plaintiff counters that the issues raised in the present case are not identical to those raised in the Maryland case or the summons enforcement proceedings. Specifically, plaintiff notes that the defendants in this case are former President Clinton and nine members of Congress, whereas the defendants in the Maryland case were IRS Commissioner Rossotti, the IRS, and several employees of the IRS. The

petitioner in the summons enforcement proceeding was the United States of America and the defendant was Judicial Watch. While the subject of the Maryland action was the improper motivation of IRS Commissioner Rossotti and several other agency officials to retaliate against Judicial Watch for exercising its First Amendment rights, this case involves "the improper and unlawful efforts of Defendant Clinton and the Congressional Defendants to target Judicial Watch for a punitive, retaliatory tax audit in violation of Judicial Watch's First Amendment rights." Pl.'s Opp'n to Congress. Defs.' Mot. at 17. Furthermore, plaintiff observes, the instant action concerns defendants' efforts "to have the IRS continue with a preexisting audit at a time when the IRS otherwise appeared to be backing off the audit." *Id.*

As for the summons enforcement proceeding, the case concerned whether to enforce a document request served by the IRS upon Judicial Watch. As a defense in that proceeding, plaintiff attempted to demonstrate retaliation on behalf of the IRS. Moreover, the proceeding addressed the "extraordinary and unprecedented breadth of the summons the IRS was seeking to force on Judicial Watch." *Id.* Plaintiff maintains that the issues raised in the prior litigation are distinct from the efforts in the instant matter to "intimidate and coerce the IRS in target [sic] Judicial Watch with a punitive, retaliatory audit and/or step up and expand an existing audit of Judicial Watch." *Id.* at 18.

13

Because the D.C. Circuit has held that collateral estoppel forecloses litigation of those issues of law or fact that were actually litigated and necessarily decided by a *valid and final judgment*, *see, e.g., I.A.M. Nat'l Pension Fund, Ben. Plan A v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 947 (D.C. Cir. 1983), it is imperative to define the concept of a "final judgment." "[C]ollateral estoppel does not require a judgment 'which ends the litigation. . . and leaves nothing for the court to do but execute the judgment.'" *Zdanok, et. al., v. Glidden Co.,* 327 F. 2d 944, 955 (2nd Cir. 1964)(quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S. Ct. 631 (1945). Rather, finality in the estoppel context includes many dispositions which, while not final in that sense, have nonetheless been fully litigated. *Zdanok,* 327 F. 2d at 955. Finality may mean "little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2nd Cir. 1961), *cert denied*, 368 U.S. 986, 82 S. Ct. 601 (1962).

As noted previously, the present litigation was preceded by *Judicial Watch I*, in which plaintiff's complaint against the defendant IRS officials was dismissed on the grounds of qualified immunity. In its opinion affirming the district court's ruling in that case, the Fourth Circuit specifically addressed the issue of a *Bivens* remedy for the initiation and conduct of an allegedly

14

politically motivated, retaliatory tax audit. The issue decided in *Judicial Watch I* for which the defendants assert collateral estoppel is, therefore, purely a legal one: whether plaintiff's claims of a retaliatory tax audit give rise to a *Bivens* claim against federal officials.[2] The decision in *Judicial Watch I* thus constituted a valid and final judgment for purposes of the present motion, and the Court may proceed to consider whether the three requirements for preclusion are met.

As defendants correctly assert, "the fact that plaintiff is suing different defendants and raising claims that are similar but not identical to the previous suit is insufficient to relieve plaintiff from the bar of collateral estoppel." Cong. Defs.' Mot. at 17.  The three criteria required to establish a defense of collateral estoppel are clearly met in the present case. First, plaintiff's amended complaint in this action seeks to raise the same constitutional challenges to the current IRS audit that plaintiff asserted in its lawsuit in the federal district court in Maryland-namely, that the IRS audit is a politically motivated, retaliatory audit in violation of its First, Fourth, and Fifth Amendment rights.  In the prior case, in fact, the Maryland district court similarly characterized the suit as one in which "[t]he crux of Plaintiff's claims is that the IRS audit is 'retaliatory,

---

[2] When a lower court's decision is appealed, the issue decided by the appellate court is awarded the preclusive effect of collateral estoppel.

politically-motivated, and unconstitutional.'" *Judicial Watch I,* 217 F. Supp.2d at 621. As noted above, the Fourth Circuit specifically addressed the permissibility of *Bivens* remedies for allegedly retaliatory, politically motivated tax audits. This case involves the same set of facts and legal claims as were litigated by plaintiff in its suit before the Maryland court and the Fourth Circuit. Moreover, the documents at the heart of plaintiff's claims, the letters forwarded to the IRS from members of Congress, were placed in the record of that suit.[3]

In *McLaughlin v. Bradlee,* 803 F.2d 1197 (D.C. Cir. 1986), plaintiff brought various suits against various individuals alleging violations of his constitutional rights brought about by the release of information by law enforcement officers to members of the press. On appeal from dismissal of one of the later suits, the D.C. Circuit held that consideration of the issues raised in that suit was precluded in light of the judgment of substantially the same issues in the earlier suit, notwithstanding the fact that neither the defendants named, nor the causes of action asserted, were identical

---

[3] For instance, the documents offered as evidence of the Congressional defendants' conduct alleged in this case – the correspondence to the IRS forwarding constituent letters inquiring about Judicial Watch's tax-exempt status-were made part of the record in *Judicial Watch I. See Judicial Watch v. Rossotti,* No. 01-CV-2672-WMN, slip op. at 2-6 (D. Md. Oct. 7, 2002 (Memorandum and Order granting motion to supplement record and denying motion to vacate court's Order of March 27, 2002 dismissing claims against individual defendants); *see also Judicial Watch I,* 317 F.3d at 406 n. 2.

in the two suits. *McLaughlin,* 803 F.2d at 1203-04.  Concluding that merely substituting the parties and modifying the legal claims was insufficient to avoid the effect of collateral estoppel, the court held that plaintiff's use of different legal terms to label claims in a new suit amounted to "no more than cosmetic changes [plaintiff] has made to perpetuate litigation on the same basic issues."  *Id.* at 1204.  As in *McLaughlin,* plaintiff's efforts in this case to differentiate the claims before this Court from those diposed of in prior actions does not permit plaintiff to avoid the bar of collateral estoppel.

With respect to the requirement that the issue in question must have been actually and necessarily determined by a court of competent jurisdiction in a prior case, the analysis is similar. As highlighted above, plaintiff set forth the same allegations, and offered the same documents as evidence, in conjunction with its suit against the individual IRS officials.  In its opinion affirming the lower court's dismissal of Judicial Watch's claims, the Fourth Circuit explicitly found that the Congressional defendants' letters forwarding constituent correspondence to the IRS "simply evidence constituent service, which our political system accepts and even applauds." *Judicial Watch I,* 317 F.3d at 406 n.2. Referring to the allegations against Former President Clinton, the Fourth Circuit held that "nothing in the record indicates that [the Former President's actions] had any effect on the IRS's decision to audit Judicial

Watch." *Id.* The court concluded that

> [t]aken together...Congress's considerable attention to the rights and remedies available to taxpayers and the Supreme Court's hesitancy in creating *Bivens* remedies in such circumstances provide strong support for the conclusion that no *Bivens* remedy lies in this case.

*Id.* at 412.

Finally, plaintiff argues that applying collateral estoppel would be unfair because it did not have a full and fair opportunity to present its case that the IRS was initiated and perpetuated in retaliation against its exercise of Constitutional rights given that its complaint was dismissed before it "had the opportunity to conduct any discovery[.]" Congress. Defs.' Reply Br. at 5 (quoting Pl. Opp'n to Congress. Defs.' Mot. at 18-19.) While plaintiff's claims never survived the motion to dismiss stage in the district or appellate court proceedings, defendants persuasively note that plaintiff had a full and fair opportunity in *Judicial Watch I* to litigate the specific issue of a *Bivens* remedy against federal officials for allegedly retaliatory tax audits. "[A]s plaintiff's claims were dismissed on a motion under Fed. R. Civ. P. 12, all ...factual allegations were accepted as true and the complaint was reviewed under the standard *most* favorable to plaintiff."

In addition, the federal district court for the District of Columbia (Huvelle, J.) recently considered and rejected, in conjunction with the enforcement action, essentially the same claims that plaintiff advances here-i.e., the claim that the IRS audit was a

18

politically-motivated, retaliatory audit and that the defendants' forwarding of constituent mail about plaintiff to the IRS violated plaintiff's constitutional rights. *United States v. Judicial Watch,* slip op. at 25-27. In the summons enforcement proceeding, the IRS produced to plaintiff over 1,000 documents, the reports of two Inspector General investigations relating to plaintiff's allegations, and affidavits from numerous IRS officials. *United States v. Judicial Watch,* slip op. at 9-11. Summarizing in excruciating detail the accumulation of "evidence" before it, and referring specifically to the e-mail forwarded by the White House to the IRS, the D.C. district court found that

> [t]here is no indication that this process was anything other than standard operating procedure for directing a citizen's letter to the appropriate governmental agency.  There is no cover letter from the White House directing the IRS . . . to initiate an audit. . . . The e-mail does not create a "link" between the Clinton White House and the IRS. . . nor does it suggest an improper motive for the IRS audit.  Similarly, there is nothing improper about members of Congress forwarding similar letters from their constituents to the IRS.  A Congressman's request that the IRS' tax-exempt Division take "appropriate action" . . . or "necessary action and response" . . . does not suggest anything more than efforts by members of Congress to represent their constituents by responding to their concerns and by forwarding them to the appropriate agency for response.

*Id.* at 26.

While the enforcement action may not have given rise to the type of "final judgment" required for estoppel purposes, defendants do not offer its findings as independent grounds for preclusion in this case. The D.C. district court's conclusions, however, provide

additional evidence that the permissibility of filing *Bivens* suits against federal officials in retaliatory tax audit cases has been extensively litigated.

As the foregoing analysis demonstrates, all three conditions for applying collateral estoppel are satisfied in this case. Plaintiff has had a full and fair opportunity to litigate its claims alleging a retaliatory and politically motivated tax audit and three separate courts have seen evidence, and offered findings, relating to the propriety of the action and the permissibility of a *Bivens* remedy.

Accordingly, plaintiff's claims against former President Clinton and the Congressional defendants are barred by collateral estoppel and plaintiff's complaint is dismissed.  Having thus found, the Court need not reach the additional arguments advanced by defendants.

IV.     Conclusion

Upon consideration of the House and Senate Defendants' Motion to Dismiss, Former President Clinton's Motion to Dismiss, the responses and replies thereto and the case and statutory law governing the issues, it is by the Court hereby

**ORDERED** that plaintiff's claims against defendants are **barred** by the doctrine of collateral estoppel, that defendants' motions to dismiss [15],[16],[20] are **granted** and that plaintiff's complaint is hereby **dismissed.**